ALTIMARI, Circuit Judge:
 

 This appeal is the outgrowth of a long and tortured reorganization proceeding that is currently on-going in the United States Bankruptcy Court for the Southern District of New York. After five years of bankruptcy proceedings, appellee, cross-appellant Latham Sparrowbush Associates (“LSA”), moved to sanction the debtor’s attorney, appellant, cross-appellee Leon C. Baker, for filing a frivolous bankruptcy petition and for repeatedly asserting that his wife was the beneficial owner of a leasehold formerly held by the bankrupt estate. The bankruptcy court (Howard Schwartzberg,
 
 Judge)
 
 granted the motion and imposed a $60,145.16 sanction against Leon Baker pursuant to Bankruptcy Rule 9011 and 28 U.S.C. § 1927 (1988).
 
 In re Cohoes Indus. Terminal,
 
 103 B.R. 480 (Bankr.S.D.N.Y.1989). The United States District Court for the Southern District of New York (Vincent L. Broderick,
 
 Judge)
 
 affirmed the bankruptcy court’s judgment. Appellant Baker now appeals from this judgment, arguing that the bankruptcy court abused its discretion by imposing the sanctions. LSA cross-appeals, seeking an increase in the sanction award.
 

 On this appeal, we address whether a court may assess sanctions against an attorney for filing what it deemed a frivolous bankruptcy petition, even though neither the party seeking sanctions nor the court itself determined that dismissal of the petition was appropriate. Additionally, we consider whether it is frivolous for a corporation in financial distress, but not
 
 in extre-mis,
 
 to make a Chapter 11 filing if one of the purposes for the filing is to attack collaterally a state court default judgment.
 

 For the reasons that follow, we reverse the judgment of the district court and vacate the bankruptcy court’s order.
 

 BACKGROUND
 

 In 1968, Latham Sparrowbush Associates (“LSA”), a real estate concern operating in upstate New York, leased a garden apartment complex to Shaker Estates, Inc. (“Shaker Estates”). Approximately five years later, in 1973, Shaker Estates assigned its rights under the lease to Cohoes Industrial Terminal, Inc. (“Cohoes”). Co-hoes’ president and sole shareholder was Leon Baker.
 

 On December 26, 1984, LSA notified Co-hoes that it intended to terminate the lease pursuant to Article 32 of the lease agreement, which states in pertinent part:
 

 The Landlord reserves the right to terminate or receive an assignment of the lease and the term hereof, upon giving sixty (60) days notice in writing to the tenant of Landlord’s intention so to terminate the lease and the lease shall cease, determine and end at the expiration of sixty (60) days from the day when such notice is given. The Landlord shall pay to the tenant as the consideration for the surrender of the demised premises,
 
 *225
 
 the sum of $350,000.00 in cash or certified check to the order of the tenant....
 

 After receiving LSA’s notice of termination, Cohoes disputed the validity of the termination clause. Specifically, Gloria F. Baker, Secretary of Cohoes and wife of appellant Leon Baker, initiated an action in New York State Court seeking a declaratory judgment that Article 32 of the lease was invalid. The New York Supreme Court, Westchester County, dismissed the case, finding that Gloria Baker, as a “legal outsider” to the lease, lacked standing to bring the action.
 
 Baker v. Latham Sparrowbush Assoc.,
 
 Index No. 1699-85 (N.Y.Sup.Ct. Apr. 30, 1985).
 

 While Gloria Baker’s suit was pending, LSA commenced an action against Cohoes in the Supreme Court of New York, Albany County, seeking to reacquire possession of the apartment complex. LSA endeavored to provide Cohoes with notice of the action by serving two copies of the summons and the complaint on the Secretary of State, pursuant to New York’s Business Corporation Law § 306 (McKinney 1986). Because Cohoes had failed to properly update the papers that it filed with the Secretary of State designating an agent for service, the complaint and summons were forwarded to the incorrect address. Consequently, Cohoes was never served with a copy of the papers.
 

 On March 15, 1985, Cohoes defaulted by failing to answer LSA’s complaint. One month later, the court entered a default judgment against Cohoes, directing it to deliver possession of the premises to LSA in return for LSA’s payment of $350,000. Cohoes moved to vacate the default judgment, arguing that the judgment was invalid because service was constitutionally defective. Essentially, Cohoes asserted that because LSA was aware that the Secretary of State had forwarded the summons and complaint to Cohoes’
 
 former address,
 
 LSA had not served Cohoes in a manner that was “reasonably calculated” to inform Co-hoes of the action. The New York Supreme Court denied Cohoes’ motion on procedural grounds and never addressed the adequacy of the service.
 

 On appeal, the Appellate Division, concluding that Cohoes’ failure to update its papers did not constitute a reasonable excuse for vacating the default judgment, affirmed the Supreme Court’s decision.
 
 See Latham Sparrowbush Assoc, v. Cohoes Indus. Terminal, Inc.,
 
 114 A.D.2d 584, 494 N.Y.S.2d 195 (3d Dep’t 1985). In passing, the court suggested that Cohoes’ counsel may have actually received a copy of the summons and complaint in connection with Cohoes’ participation in another court proceeding. Nevertheless, the court, resting its holding on procedural grounds, did not consider the constitutionality of the manner of service.
 

 The New York Court of Appeals declined to issue leave to appeal as a result of lack of finality.
 
 See Latham Sparrowbush Assoc. v. Cohoes Indus. Terminal, Inc.,
 
 67 N.Y.2d 736, 500 N.Y.S.2d 100, 490 N.E.2d 1226 (1986). Following the appeal, LSA prepared to execute the judgment and repossess the apartment complex.
 

 Cohoes believed that with the impending loss of its lease, it could no longer remain solvent. Indeed, Cohoes had been facing severe financial difficulties prior to the entry of the default judgment. For example, shortly before LSA gave notice of termination, the primary tenant at the other building that Cohoes operated — an industrial terminal building — cancelled its lease. This severely depleted Cohoes’ net income. Additionally, New York State had recently informed Cohoes that it would be required to install a sewer line at the industrial terminal — the cost of the sewer line would be between $125,000 and $250,000. Moreover, the roof on the industrial terminal was unsound, and Cohoes was going to be required to expend between $150,000 and $300,000 to fix it. Cohoes was also in arrears on mortgage payments and owed money to various suppliers.
 

 As a result of this financial distress, Leon Baker, acting as Cohoes’ attorney, filed a petition for Chapter 11 reorganization on Cohoes’ behalf. A United States Trustee was appointed to oversee the reorganization.
 

 
 *226
 
 In the bankruptcy proceedings, Baker challenged the legitimacy of the state court default judgment, arguing that the judgment was constitutionally defective because Cohoes did not receive proper notice of the action. The bankruptcy court, concluding that Cohoes was barred from asserting this jurisdictional claim, determined that the state court order terminating Co-hoes’ leasehold was
 
 res judicata.
 
 Accordingly, the court refused to invoke the automatic stay provision against LSA and allowed LSA to reacquire possession of the garden apartments in exchange for a $350,-000 payment to Cohoes.
 

 At approximately the same time, Leon Baker made a motion in bankruptcy court to transfer the apartment complex’ title to his wife, claiming that Gloria Baker was an undisclosed principal of the lease and that she was therefore the beneficial owner of the leasehold. The bankruptcy court rejected this claim, finding that the state court decision approving termination of the lease had extinguished Cohoes’ interest in the property. As a result of this finding, the court concluded that even if Gloria Baker could establish that she was the beneficial owner of the lease, Cohoes had not retained title to the property and therefore had no interest to transfer to her.
 
 See In re Cohoes Indus. Terminal, Inc.,
 
 62 B.R. 369, 378-80 (Bankr.S.D.N.Y.1986),
 
 aff'd,
 
 70 B.R. 214 (S.D.N.Y.1987). Subsequently, Leon Baker directly asserted the claim that Gloria Baker was an undisclosed principal of the lease and was therefore the leasehold’s beneficial owner. The bankruptcy court barred Leon Baker from raising this argument because, as both Cohoes’ attorney and Gloria Baker’s husband, Baker faced a conflict of interest.
 

 Shortly thereafter, the United States Trustee moved alternatively to dismiss the bankruptcy proceeding, to convert it to a Chapter 7 proceeding or to require the appointment of a Chapter 11 trustee. LSA joined in the motions for conversion and for appointment of the trustee, but opposed the request for dismissal. The bankruptcy court, determining that both dismissal and conversion were inappropriate, appointed a Chapter 11 trustee.
 
 See In re Cohoes Indus. Terminal, Inc.,
 
 65 B.R. 918 (Bankr.S.D.N.Y.1986).
 

 The Chapter 11 trustee retained Leon Baker as special counsel. In this role, Baker once again raised the argument that Gloria Baker was the beneficial owner of the Sparrowbush apartment leasehold. Upon finding that “Gloria Baker was a phantom figure” with respect to the lease, the bankruptcy court rejected this claim.
 
 See In re Cohoes Indus. Terminal, Inc.,
 
 78 B.R. 681, 690 (Bankr.S.D.N.Y.1987).
 

 On December 17, 1987, the bankruptcy court converted the action from a Chapter 11 proceeding to a Chapter 7 proceeding. At that time, the court determined that there were no tangible assets in the estate, aside from the $350,000 payment that LSA had made to Cohoes. Therefore, it concluded that reorganization was impossible. Shortly thereafter, however, the case was reconverted to a Chapter 11 proceeding, which is still on-going.
 

 After LSA had been paid in full on all claims it asserted in the bankruptcy proceeding, it initiated the underlying action against Leon Baker, seeking sanctions and attorney’s fees pursuant to Bankruptcy Rule 9011 and 28 U.S.C. § 1927 (1988). Cohoes cross-moved for sanctions against LSA in the amount of $12,500, on the ground that Cohoes was forced to defend against LSA’s motion for fees and sanctions. The bankruptcy court, finding that Leon Baker filed a frivolous Chapter 11 proceeding on behalf of Cohoes and that he had repeatedly asserted a frivolous claim regarding Gloria Baker’s beneficial ownership of the Sparrowbush lease, awarded LSA $60,145.16. The court denied Cohoes’ cross-motion for sanctions. Baker appealed this decision to the United States District Court for the Southern District of New York. LSA cross-appealed, seeking an increase in the amount of the fine assessed against Baker. Judge Broderick, ruling from the bench, affirmed the bankruptcy court’s decision and denied LSA’s appeal for additional sanctions. Baker now appeals the sanction award to this Court. LSA cross-appeals, contesting the amount of the award.
 

 
 *227
 
 DISCUSSION
 

 The bankruptcy court found that the imposition of sanctions against Baker was warranted for two separate reasons. First, the court determined that Leon Baker filed a “frivolous Chapter 11 petition in order to save a lease which was no longer property of the estate because of a final state court judgment.”
 
 In re Cohoes,
 
 103 B.R. at 485. Second, the bankruptcy court concluded that Baker’s repeated assertions that his wife was the beneficial leaseholder of property held by the estate were frivolous. The district court agreed and affirmed the bankruptcy court’s judgment. For the following reasons, we do not find that Baker’s claims were so wholly unfounded as to warrant the imposition of sanctions.
 

 A. Chapter 11 Filing
 

 Based on Bankruptcy Rule 9011, the bankruptcy court sanctioned Baker for filing a frivolous bankruptcy petition. Rule 9011, which allows a court to impose sanctions on attorneys who assert frivolous claims and defenses in bankruptcy proceedings, provides:
 

 The signature of an attorney or a party [on a document submitted to the court] constitutes a certificate that the attorney or party has read the document; that to the best of the attorney’s or party’s knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney’s fee.
 

 This rule parallels Federal Rule of Civil Procedure 11, containing “only such modifications as are appropriate in bankruptcy matters.”
 
 Cinema Serv. Corp. v. Edbee Corp.,
 
 774 F.2d 584, 585 (3d Cir.1985). Accordingly, our review of the lower courts’ application of Rule 9011 is informed by Rule 11 jurisprudence.
 

 As in Rule 11 cases, we review the imposition of sanctions pursuant to Bankruptcy Rule 9011 using the abuse of discretion standard.
 
 See Cooter & Gell v. Hartmarx Corp.,-
 
 U.S.-, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990);
 
 Mareno v. Rowe,
 
 910 F.2d 1043 (2d Cir.1990),
 
 cert. denied,
 
 -U.S. -, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). We are mindful, however, that “legal errors on the part of the [lower courts] will constitute an abuse of discretion.”
 
 Mareno,
 
 910 F.2d at 1047.
 

 In order to impose a Rule 9011 sanction, a bankruptcy court must find that an attorney has submitted a claim that has no chance of success under existing precedents and that fails to advance a “reasonable argument to extend, modify or reverse the law as it stands.”
 
 Id.; see also Securities Indus. Ass’n v. Clarke,
 
 898 F.2d 318, 321 (2d Cir.1990). Essentially, the court may sanction on the basis of Rule 9011 if an attorney advances a frivolous argument.
 

 A petition for Chapter 11 bankruptcy may be deemed frivolous if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings.
 
 See, e.g., Carolin Corp. v. Miller,
 
 886 F.2d 693, 698-702 (4th Cir.1989);
 
 In re Coffee Cupboard, Inc.,
 
 119 B.R. 14, 17-18 (E.D.N.Y.1990);
 
 In re Marion Street Partnership,
 
 108 B.R. 218, 223 (Bankr.D.Minn.1989). Generally, courts should conclude that a debtor has no demonstrable intent to reorganize only if, upon considering the totality of the circumstances, there is substantial evidence to indicate that the debtor made a bad faith filing.
 
 See
 
 5 C. King,
 
 Collier on Bankruptcy
 
 § 1112.03, at 112-33 (15th ed. 1989)
 
 (“Collier
 
 ”). Here, the bankruptcy court,
 
 *228
 
 finding that Cohoes’ primary reason for filing the Chapter 11 petition was to impede LSA’s attempt to reacquire possession of the Sparrowbush apartment complex, concluded that Cohoes did not have a genuine intent to emerge from bankruptcy as a rejuvinated organization. Therefore, pursuant to Rule 9011, it sanctioned Baker for filing a frivolous petition on Cohoes’ behalf.
 

 Baker concedes that one of Cohoes’ reasons for filing the petition was to attack collaterally the state court default judgment as unconstitutional and, consequently, stay LSA’s execution of the default judgment. However, he argues that it was legitimate for Cohoes, a corporation in financial difficulty, to resort to the bankruptcy court to challenge the constitutionality of a judgment rendered against it, as well as to obtain a respite from creditor demands and attempt to reorganize. We agree.
 

 Filing a bankruptcy petition with the intent to frustrate creditors does not by itself “establish an absence of intent to seek rehabilitation.”
 
 Banque de Financement, S.A. v. First National Bank,
 
 568 F.2d 911, 917 (2d Cir.1977). Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be “frustrated” when their debtor files a bankruptcy petition.
 
 See, e.g., In re Food Workshop, Inc.,
 
 70 B.R. 962, 967 n. 3 (Bankr.S.D.N.Y.1987). In reality, there is “a considerable gap between delaying creditors, even secured creditors, on the eve of foreclosure and the concept of abuse of judicial purpose.”
 
 Collier
 
 § 1112.03, at 1112-33.
 

 Although LSA’s attempt to execute the state court judgment was delayed by Cohoes’ collateral attack, it cannot be held that the collateral attack was unfounded. A bankruptcy court, like any federal court, may entertain a collateral attack on a state court judgment.
 
 See Kelleran v. Andrijevic,
 
 825 F.2d 692, 694 (2d Cir.1987),
 
 cert. denied,
 
 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). However, because bankruptcy filings must be made in good faith, an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally — the debtor must have some intention of reorganizing.
 
 See generally Carolin Corp.,
 
 886 F.2d at 698-702. Although a debtor need not be
 
 in extremis
 
 in order to file such a petition, it must, at least, face such financial difficulty that, if it did not file at that time, it could anticipate the need to file in the future.
 
 See, e.g., In re Johns Manville Corp.,
 
 36 B.R. 727 (Bankr.S.D.N.Y.1984). In this case, it is clear that Cohoes was encountering financial stress at the time it filed its petition: it had recently lost the primary tenant of its major property; it had been ordered by New York State to build a sewer connection on its property which would cost between $125,000 and $250,000; it needed a new roof on its building which had an estimated cost of $150,000 to $300,-000; it was in arrears on rental and mortgage payments; and it was indebted to suppliers. Certainly this is enough to support Cohoes’ Chapter 11 filing and its subsequent application to the court to consider its collateral attack.
 

 It is also clear that a collateral attack on the state court default judgment was available to Cohoes. On appeal, the New York courts based their denial of Cohoes' motion to vacate the default judgment on procedural grounds. Because Cohoes’ constitutional attack on the propriety of service was never addressed by the New York courts, a collateral attack remained open to Cohoes in the bankruptcy court.
 

 Moreover, it is equally apparent that Co-hoes had a plausible basis on which to premise its collateral attack. A default judgment is vulnerable to a collateral attack if the court rendering the judgment does not have proper jurisdiction over the action.
 
 See Kalb v. Feuerstein,
 
 308 U.S. 433, 438-39, 60 S.Ct. 343, 345-46, 84 L.Ed. 370 (1940). In this case, Cohoes challenged the constitutionality of the state court default judgment rendered against it, arguing that in the state action, LSA failed to effect service in a manner that was reasonably calculated to notify Cohoes.
 
 See Mul-
 
 
 *229
 

 lane v. Central Hanover Bank & Trust Co.,
 
 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Cohoes did not contest that service was effected in accordance with New York’s Business Corporation Law § 306. Nor did it challenge the constitutionality of the section itself. Instead, it argued that because LSA knew that the Secretary of State, on whom service was made, had forwarded the summons and complaint to Cohoes’
 
 former address,
 
 LSA’s choice of alternative service was not reasonably designed to apprise Cohoes of the pendency of the proceeding and was thus improper. Moreover, Cohoes contended that even though it learned of the action through other channels, LSA was nevertheless required to effect constitutional service on Cohoes.
 
 See City of New York v. New York, N.H. & H. Ry. Co.,
 
 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). Since personal jurisdiction over a litigant cannot constitutionally be obtained if service is improper, Cohoes argued that the judgment itself was invalid.
 
 See, e.g., Robinson v. Hanrahan,
 
 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972) (holding that service regarding state foreclosure proceedings sent to the last known address of a prisoner was not “reasonably calculated” to reach the prisoner when the State knew that the prisoner was not at the address to which the notice was mailed). Although we do not address the merits of Cohoes’ jurisdictional argument, it is evident that there existed a reasonable basis on which to attack collaterally the default judgment in the bankruptcy court.
 

 In any event, it seems clear from Cohoes’ actions following the filing that it did not file the petition with the sole intent of delaying execution of the state court judgment. While the initiation of Chapter 11 proceedings did stave off LSA’s execution of the judgment for several months, the bankruptcy court eventually determined that the state court judgment was
 
 res judi-cata
 
 and directed Cohoes to relinquish possession of the apartment complex. At that point, Cohoes did not seek to convert the proceeding to Chapter 7; nor did it move to dismiss the petition.
 
 See
 
 11 U.S.C. § 1112 (1988) (providing for voluntary dismissal or conversion to Chapter 7 on application or motion of the debtor). Rather, it continued in its attempt to reorganize.
 

 In concluding that the Chapter 11 petition was frivolous, the bankruptcy court emphasized that at the time the petition was filed, Cohoes had no secured creditors and only three unsecured creditors that were unrelated to it. Further, the court noted that at the time of the filing, Cohoes no longer held any property that was in danger of being forfeited as a result of creditor pressure. Despite these conclusions, the bankruptcy court did not grant the United States Trustee’s motion to dismiss the petition; nor did it subsequently dismiss the petition
 
 sua sponte.
 
 Rather, the court appointed a Chapter 11 trustee to oversee the reorganization. Although the court later converted the action to a Chapter 7 proceeding — which according to LSA indicates the court’s belief in the petition’s frivolity — it thereafter reconverted the action to Chapter 11. Because bankruptcy courts readily dismiss Chapter 11 petitions that are brought in bad faith,
 
 see, e.g., Carolin Corp.,
 
 886 F.2d 693;
 
 In re Little Creek Dev. Co.,
 
 779 F.2d 1068 (5th Cir.1986);
 
 In re Madison Hotel Assoc.,
 
 749 F.2d 410 (7th Cir.1984);
 
 Banque de Financement,
 
 568 F.2d at 917, the court’s initial decision not to dismiss the Chapter 11 petition, as well as its subsequent decision to reconvert the case to Chapter 11, strongly indicate that the petition itself had some valid basis in law. Indeed, we believe that a court may not ordinarily consider a Chapter 11 bankruptcy petition to be frivolously filed if the court itself previously rejected a motion to dismiss the petition.
 

 It should also be noted that LSA failed to move for dismissal of the debtor’s Chapter 11 petition and instead joined in the motion to appoint a Chapter 11 trustee. If LSA believed that Cohoes would not eventually reorganize, LSA would have — or indeed should have — joined in the United States Trustee’s motion to dismiss the petition. In fact, LSA admits that continuation of the Chapter 11 proceeding was advantageous to it, because the proceeding afforded it a “convenient forum to litigate
 
 *230
 
 claims.” Consequently, we find that LSA, a party that never moved to dismiss the Chapter 11 case or otherwise alerted the court to the purported frivolity of the petition, is estopped from asserting that the Chapter 11 petition was frivolously filed.
 

 Our basic view is that the petition could not have been deemed frivolous at the time it was filed and therefore we conclude that the bankruptcy court abused its discretion by imposing sanctions on this basis.
 

 B. Reassertion of the Undisclosed Principal Argument
 

 The other ground on which the bankruptcy court premised its sanction was Baker’s repeated contention that his wife was Cohoes’ undisclosed principal in the Sparrowbush lease transaction. The court based this portion of the award on both Rule 9011 and 28 U.S.C. § 1927. Section 1927 provides in pertinent part:
 

 Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys’ fees reasonably incurred because of such conduct.
 

 A bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that “[an] attorney’s actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.”
 
 Oliveri v. Thompson,
 
 803 F.2d 1265, 1273 (2d Cir.1986),
 
 cert. denied sub nom., County of Suffolk v. Graseck,
 
 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Sanctions awarded on the basis of 28 U.S.C. § 1927 are also reviewed under the abuse of discretion standard.
 
 See McMahon v. Shearson/American Express, Inc.,
 
 896 F.2d 17, 23 (2d Cir.1990);
 
 Apex Oil Co. v. Belcher Co.,
 
 855 F.2d 1009, 1020 (2d Cir.1988).
 

 The bankruptcy court found that Baker’s reassertion of the undisclosed principal argument was both vexatious and unfounded. According to the court, Baker raised this issue once before the state court and three separate times in the bankruptcy proceeding; the court also concluded that each time the argument had been raised, it was rejected. Further, the court found that there was no substantive evidence to support the claim. Thus, it determined that sanctions against Baker were warranted for continuing to advance this argument. We disagree.
 

 The record reveals that no court squarely addressed the issue of Gloria Baker’s beneficial ownership of the leasehold until the third time it was raised in bankruptcy court. When Gloria Baker initially applied to the New York Supreme Court for a declaratory judgment that the termination clause was invalid, the court dismissed her complaint for lack of standing. The court did not, therefore, expressly consider the merits of Gloria Baker’s claim that she was an undisclosed principal.
 

 Subsequently, Leon Baker attempted to assert the undisclosed principal argument in the bankruptcy proceeding by arguing that the Sparrowbush leasehold should be transferred to Gloria Baker because she was its beneficial owner. The bankruptcy court rejected this claim, finding that prior state court proceedings had divested Co-hoes of any stake it might have had in the property. As a result, the court determined that even if Gloria Baker was the leasehold’s beneficial owner, Cohoes had no interest to transfer to her. Therefore, the court did not address the merits of the undisclosed principal argument at that time. Soon thereafter, Leon Baker again attempted to raise the claim during the bankruptcy proceedings. Upon finding that Baker would face a conflict of interest if he, as Cohoes’ advocate, was permitted to assert that his wife was the beneficial leaseholder of the property, the court prohibited him from advancing the argument.
 

 Finally, Baker raised the argument in his capacity as special counsel to the Chapter 11 trustee. At that point, the bankruptcy court held a hearing to determine the validity of the claim. Baker called three witnesses and produced a number of documents to support his contention. The
 
 *231
 
 court recognized that a number of Cohoes’ records were maintained in Gloria Baker’s name and that Cohoes had also filed a certificate of doing business in her name. Although the court ultimately concluded that the claim had no merit, it cannot be said that there existed no evidence to support Leon Baker’s position.
 

 In light of the foregoing, we cannot find that Baker repeatedly reasserted the undisclosed principal argument to “vexatiously multiply proceedings.” Instead, we find that Baker only raised the claim until it was actually reviewed on the merits. While we certainly understand the bankruptcy court’s frustration with Baker for reiterating this claim, we are unpersuaded that the undisclosed principal argument had no basis in law or in fact. Therefore, we find that the bankruptcy court abused its discretion by imposing sanctions on Baker for raising this argument.
 

 CONCLUSION
 

 For the reasons stated above, the judgment of the bankruptcy court is reversed and LSA’s cross-appeal is dismissed.