*125
 
 MEMORANDUM OF DECISION
 

 ALLAN L. GROPPER, Bankruptcy-Judge.
 

 This is a
 
 pro se
 
 motion by creditor Annette Casull-Garcia (“Casull”) to dismiss the Chapter 11 bankruptcy cases filed by Schur Management Company Ltd. (“Schur”) and 915 Sherman Avenue Corporation (“Sherman” and collectively with Schur, the “Debtors”). For the reasons stated below, the Court finds that these bankruptcy proceedings should be dismissed on the ground they were filed prematurely and accordingly not “in good faith” as that term has been defined by applicable case law.
 

 Factual Background
 

 Schur is a holding company for the real estate properties of the Schur Family, who are its owners. In the late 1990s, Schur became involved in third-party management and currently manages approximately sixty properties for both private and institutional owners. Schur states that in 2004 it had approximately ninety employees, and it reported revenues of approximately $2,103,425 for the fiscal year ending December 31, 2003.
 

 Sherman was formed as a holding company for an apartment complex with approximately fifty rental units located at 214 East 163rd Street, Bronx, New York (the “Premises”). On or about March 20, 1990, Schur and Sherman entered into a “Managing Agent Agreement” whereby Schur acts as the Managing Agent for the Premises. Sherman reported net profits of $72,214 in 2004.
 

 The State Court Litigation
 

 On October 11, 1996, Casull was allegedly injured at the Premises. She subsequently commenced a personal injury lawsuit in Bronx Supreme Court (the “State Court Litigation”) naming both Debtors as defendants and claiming damages totaling $10 million.
 

 At the time of Casull’s alleged personal injury, the Debtors maintained a general liability insurance policy with Reliance Insurance Company (“Rebanee”). Reliance initially covered expenses relating to the defense of the State Court Litigation, and the Debtors believed that this policy would cover up to the first $1 million of damages. They also claim to have excess policies that would cover any liability over $1 million. Based on these policies, the Debtors believed that they had adequate coverage and would not incur significant liability if Casull were successful in the State Court Litigation. However, on October 3, 2001, the Pennsylvania Insurance Department placed Reliance in liquidation; as a result, Schur and Sherman claim to have only limited insurance coverage and may suffer significant exposure if Casull is successful in the State Court Litigation. Without a general liability policy, they assert, they would be required to pay the initial $1 milbon of any judgment in the State Court Litigation, and they also claim to be unsure whether the excess insurance carriers will cover any part of a judgment that exceeds $1 milbon.
 

 The Bankruptcy
 

 On November 26, 2004, the Debtors, facing an impending trial of the State Court Litigation, each filed voluntary petitions for Chapter 11 relief, citing the need to protect their assets and the fiduciary and operating accounts they hold for others. In their schedules, each Debtor listed a contingent, disputed and unliquidated liability to Casull in the amount of $1 milbon. This was their only substantial debt. In Exhibit A to its Voluntary Petition, Schur claims to have potential liabilities of $1,014,075, $1 milbon of which is the disputed Casull claim. Of the remaining $14,075, $12,210 is on account of a capital lease for a copier and is listed as a secured debt. (Exhibit B of Sehur’s Rule 1007-2 Affidavit at B-l.) Sherman lists no secured creditors and Casull as its only unsecured creditor.
 

 Shortly after the filing Casull filed a one-page handwritten general objection to the bankruptcy cases, claiming that they would hamper her attempt to obtain a
 
 *126
 
 judgment or a fair settlement in the State Court Litigation.
 
 [1]
 
 Both Debtors thereafter consented to relief from the stay to permit Casull to proceed to litigate her claims in State court to judgment, and appropriate orders were entered on January 19, 2005. However, the Debtors objected to a dismissal of the cases; they also took the position that if the Court were inclined to grant Casull any relief in addition to lifting the stay, it should suspend the cases for the duration of the State Court Litigation and not dismiss them.
 
 [2]
 

 Discussion
 

 It is not contested on these motions that there exists a general good faith requirement under which Chapter 11 petitions can be dismissed for having been filed in bad faith. See
 
 Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.),
 
 931 F.2d 222 (2d Cir.1991);
 
 In re C-TC 9th Ave. P’ship,
 
 113 F.3d 1304, 1312 (2d Cir.1997); see also,
 
 Carolin Corp. v. Miller,
 
 886 F.2d 693, 698 (4th Cir.1989);
 
 Connell v. Coastal Cable T.V., Inc. (In re Coastal Cable T.V., Inc.),
 
 709 F.2d 762, 764 (1st Cir.1983). The good faith requirement “furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy.”
 
 In re Little Creek Development Co.,
 
 779 F.2d 1068, 1072 (5th Cir.1986). The cases caution that dismissal for lack of good faith “is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances.”
 
 Carolin Corp.,
 
 886 F.2d at 698;
 
 In re 68 West 127 Street, LLC,
 
 285 B.R. 838, 844 (Bankr.S.D.N.Y.2002); see also,
 
 In re Sletteland,
 
 260 B.R. 657, 662 n. 2 (Bankr.S.D.N.Y.2001). Nevertheless, the good faith requirement has been applied in a number of different contexts. In the instant cases, the real question is whether there is a present need for a Chapter 11 reorganization and whether the petitions are “premature.” This is an issue on which the Second Circuit has not spoken,
 
 [3]
 
 but as to which there is a substantial body of law.
 

 The leading case on dismissal for prematurity is
 
 In re SGL Carbon,
 
 200 F.3d 154 (3d Cir.1999), where the debtor filed a Chapter 11 petition as a response to pending antitrust litigation. The debtor there was facing a criminal antitrust complaint from the Department of Justice, an antitrust class action inv which the plaintiffs were asserting at least $240 million in damages, and no less than six individual lawsuits from parties that had opted out of the class action.
 
 Id. at
 
 156-57. Nevertheless, the Circuit Court dismissed the peti
 
 *127
 
 tion, holding that there was “no evidence that [the] distraction [caused by the antitrust litigation] posed a ‘serious threat’ to the company’s operational well being” and “no evidence that the possible antitrust judgment might force [the debtor] out of business.”
 
 Id.
 
 at 162-63. As
 
 SGL Carbon
 
 stressed, “[e]ourts ... have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11.”
 
 Id.
 
 at 166; see also,
 
 Marsch v. Marsch (In re Marsch),
 
 36 F.3d 825, 828 (9th Cir.1994) (solvent debtor);
 
 Coastal Cable T.V., Inc.,
 
 709 F.2d at 765 (“it is uncertain whether there is a legitimate debt.”);
 
 In re Ravick Corp.,
 
 106 B.R. 834, 843 (Bankr.D.N.J.1989). The Court in
 
 SGL Carbon
 
 concluded: “The mere possibility of a future need to file, without more, does not establish that a petition was filed in ‘good faith.’ ” 200 F.3d at 164.
 

 The Debtors here, like the debtor in
 
 SGL Carbon,
 
 have no present need to file, only the “mere possibility of a future need to file.” They have not articulated any need for the protection of the bankruptcy laws at this stage of the State Court Litigation. The Debtors say they fear a judgment that they cannot afford, but they deny all liability in the lawsuit. They do not have the ability to estimate damages and have picked $1 million based on the possibility of excess insurance and the known generosity of Bronx jurors. It would be sheer speculation to guess as to the amount of a judgment, whether it would be imposed on one or both debtors and whether it would impair healthy companies with only $14,075 in aggregate liabilities and a net positive cash flow.
 

 The foregoing is not to say that a debtor must always suffer an adverse judgment before a filing a Chapter 11 petition. The Court in
 
 SGL Carbon,
 
 200 F.3d at 164, cited several cases sustaining filings where litigation had caused serious problems for the putative debtor. See, e.g.,
 
 In re Co-hoes
 
 (debtor was encountering “financial stress at the time it filed its petition”);
 
 In re The Bible Speaks,
 
 65 B.R. 415, 426 (Bankr.D.Mass.1986) (litigation had caused “a cash flow problem” which prevented the debtor “from meeting its current obligations”);
 
 In re Johns-Manville Corp.,
 
 36 B.R. 727 (Bankr.S.D.N.Y.1984) (thousands of asbestos-related cases and large judgments had triggered the need to book a $1.9 billion reserve that would have caused,
 
 inter alia,
 
 default on $450 million in debt). However, the State Court Litigation has had absolutely no effect on these Debtors’ present financial position or viability. They do not need a litigation respite, as do many Chapter 11 debtors. On the contrary, they do not dispute that the litigation should be resolved in the State courts. Nor are they financially troubled debtors that seek in good faith to avoid a preclusive judgment in State court that would prejudice legitimate efforts to preserve value for the benefit of all of their creditors.
 
 [4]
 
 Thus, these cases bear no resemblance to
 
 In re Century/ML Cable Venture,
 
 294 B.R. 9 (Bankr.S.D.N.Y.2003), relied on by the Debtors. The debtor there was a joint venture with $279.8 million of fixed debt that was coming due,
 
 *128
 
 that it could not pay and that it intended to restructure in the bankruptcy case. If these Debtors could file on the basis of speculation as to the results of personal injury litigation — and nothing more — every debtor facing a jury in a serious personal injury case could file.
 

 In addition to an absence of immediate need for bankruptcy protection, there is no reason to believe these Debtors could not obtain all needed bankruptcy relief if and when an adverse jury verdict is entered against them — or one of them — in a known amount. If a judgment impaired their ability to survive or if there were a need for Chapter 11 relief, these Debtors would have time to file. See
 
 SGL Carbon,
 
 200 F.3d at 163, n. 13, citing
 
 In re Texaco Inc.,
 
 84 B.R. 893 (Bankr.S.D.N.Y.1988); see also,
 
 Sletteland,
 
 260 B.R. at 662-63;
 
 In re P.J. Clarke’s Restaurant Corp.,
 
 265 B.R. 392 (Bankr.S.D.N.Y.2001).
 

 The Debtors attempt to distinguish
 
 SGL Carbon
 
 by claiming that they, unlike the debtor in
 
 SGL,
 
 have not created a cash reserve out of which to pay the possible future liability. Ability to pay a possible judgment is only one factor, however. In
 
 Fraternal Composite Services v. Karczewski,
 
 315 B.R. 253 (N.D.N.Y.2004), the debt- or filed a bankruptcy petition one day pri- or to a State court hearing on valuation, claiming that it would not have the resources to pay a judgment and that such a judgment would “severely impair the operations of the Debtor....”
 
 Id.
 
 at 255-56. The Court dismissed the debtor’s petition because it was an otherwise healthy company that was current on all of its obligations and not “experiencing any immediate and serious financial and/or managerial difficulties.”
 
 Id.
 
 at 257. The Court found that the debtor’s claims were, as here, “based upon nothing more than mere speculation and ... based upon the worst possible scenario....”
 
 Id.
 
 (internal quotations omitted).
 

 These Debtors, finally, argue that a judgment would disrupt their ability to protect certain fiduciary and operating bank accounts, and that a judgment would cause them to be late in making payments and irreparably harm their reputation and business. A judgment should not impede their ability to manage rent deposit or other accounts they hold for third parties. For example, rent deposit accounts are not property of the landlord on which a judgment creditor can execute. See N.Y. Gen Oblig Law § 7-103 (McKinney 2004) (requiring landlords to hold funds deposited as security under a lease in a trust).
 

 Although dismissal for prematurity falls under the rubric of a “bad faith” filing, there should be no implication here that either Debtor or its counsel acted in actual bad faith or for malicious purposes. The Court makes no such finding in either case. The issue is whether there is a valid “intent to reorganize” or “reorganizational purpose” to the filing.
 
 Cohoes,
 
 931 F.2d at 227;
 
 C-TC 9th Ave. P’ship,
 
 113 F.3d at 1309;
 
 SGL Carbon,
 
 200 F.3d at 165-67. The Court finds there was none.
 

 The Debtors Have Not Shown It Is In The Best Interests of The Creditors To Suspend The Case
 

 The Debtors argued at the hearing on dismissal that if the Court were not willing to sustain the filings, the cases should be suspended pursuant to § 305(a)(1) of the Bankruptcy Code rather than dismissed. Section 305 states in pertinent part that a court “may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if — (1) the interests of creditors and the debtor would be better served by such dismissal or sus
 
 *129
 
 pension....” 11 U.S.C. § 305(a)(1).
 
 [5]
 

 The test for dismissal or suspension pursuant to § 305(a)(1) is whether the relief would be in the “best interests” of both the debtor
 
 and
 
 its creditors. See 11 U.S.C. § 305(a)(1). The case law concerning suspension of a bankruptcy case pursuant to § 305(a)(1) is sparse, but there is no dispute that suspension is “an extraordinary remedy that should be used sparingly and not as a substitute for a motion to dismiss under other sections of the Bankruptcy Code.” L. King,
 
 et al., Collier on Bankruptcy
 
 at ¶ 305.02. The test for suspension (as well as dismissal) is whether both the debtor and the creditors would be “better served” by such action.
 
 Eastman v. Eastman (In re Eastman),
 
 188 B.R. 621, 625 (9th Cir. BAP 1995).
 

 In the matter at bar, the Debtors claim that it would be in their best interests to wait until a resolution of the State Court Litigation to resume this bankruptcy case. They have not demonstrated, however, why it would be in the best interests of their creditors to wait to be paid when the Debtors have the resources to pay them now. The Debtors can presently meet all of their non-contingent liabilities; at the time of the hearing, the Debtors had $14,000 of outstanding debt and were projecting revenues of at least $13,000 per month. Moreover, if there were an adverse judgment and an appeal, a filing followed by suspension of the case could be considered. See
 
 In re Duratech Industries,
 
 241 B.R. 283, 287 (E.D.N.Y.1999), where the District Court affirmed the decision of the Bankruptcy Court to abstain where success or failure of the Chapter 11 case depended on the outcome of civil litigation pending in State court.
 
 Duratech,
 
 importantly, is the exact opposite to the cases at bar; in
 
 Duratech
 
 an otherwise unhealthy debtor’s success in the State court litigation would allow it “to make a significant distribution to its unsecured creditors.”
 
 Id.
 
 at 288.
 

 In the instant cases, it cannot be assumed at this time that otherwise healthy debtors will be forced into bankruptcy, especially when one of the possible State court results is victory for both defendants. As the Court held in a case that considered the possibility of dismissal or suspension under § 305(a)(1), “Where one of the likely local law outcomes would obviate the need for bankruptcy entirely, the presence of such unsettled non-bankruptcy issues is a factor in counseling dismissal Of the case pursuant to 11 U.S.C. § 305(a)(1) as being in the best interests of creditors and the debtor.”
 
 In re Realty Trust Corp.,
 
 143 B.R. 920, 926-27 (D.N. Mariana Is.1992). The same reasoning, applied to these cases, counsels against suspension under § 305(a)(1) and in favor of dismissal on bad faith grounds.
 

 Finally, there is the public interest to be considered. As noted above, if the present cases are sustained and suspended, any
 
 *130
 
 company facing an adverse jury verdict in a serious personal injury case could file a Chapter 11 case with all of its immediate consequences. The introduction of the bankruptcy process at a premature stage creates a needless burden and expense to the detriment of debtors, creditors and the bankruptcy courts. As a bankruptcy filing can have a subtle effect on State litigation, a filing coupled with suspension could also be used improperly as a litigation tactic. The cases counsel that a Chapter 11 petition should not be used as a “mechanism to orchestrate pending litigation”,
 
 Furness v. Lilienfield,
 
 35 B.R. 1006, 1013 (D.Md.1983), or as a “litigation tactic.”
 
 In re HBA East, Inc.,
 
 87 B.R. 248, 259-60 (Bankr.E.D.N.Y.1988).
 

 No proper purpose is served by a needlessly premature Chapter 11 filing. The appropriate relief here is dismissal rather than suspension. These Debtors may, of course, file Chapter 11 petitions again if them worst fears come to pass.
 

 Conclusion
 

 For the reasons stated above, the voluntary petitions filed by Schur and Sherman will be dismissed, without prejudice. Separate orders are being entered concurrently herewith in each case.
 

 [1]
 

 . Casull's personal injury lawyer did not appear.
 

 [2]
 

 . Schur has taken the lead rolé in defending the motions to dismiss. However, the Debtors have coordinated their positions and requested that their cases be jointly administered, and the Court has consolidated the motions for decision.
 

 [3]
 

 . In the Second Circuit the leading cases on good faith in a Chapter 11 filing are
 
 Cohoes Indus. Terminal, Inc.,
 
 931 F.2d 222 and
 
 C-TC 9th Ave. P’ship,
 
 113 F.3d 1304. In both cases the Circuit held that a bankruptcy court could exercise its discretion to dismiss a case as filed in bad faith where “on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings.”
 
 C-TC 9th Ave. P’ship,
 
 113 F.3d at 1309, quoting
 
 In re Cohoes,
 
 931 F.2d at 227. In
 
 Cohoes
 
 the Circuit found that the petition had been filed in good faith; in
 
 C-TC 9th Ave P’ship,
 
 it came to the opposite conclusion. Both cases involved real estate holding companies that had filed in the course of State foreclosure proceedings, and the facts were very different from those present here.
 

 [4]
 

 . For example, many financially troubled debtors file a Chapter 11 petition before the action of the State court results in the termination of a lease or other property right that may be critical to their ability to reorganize for the benefit of all of their creditors. The teaching of
 
 Cohoes
 
 and
 
 C-TC 9th Ave. P’ship
 
 is that such cases may or may not be subject to dismissal on bad faith grounds, depending on their specific facts and the debtor's intent and ability to reorganize at the time of filing. Critically, these Debtors have agreed to lift the automatic stay of § 362 of the Bankruptcy Code so that the litigation with Casull can continue in its original forum.
 

 [5]
 

 . Dismissal on good faith grounds has not ordinarily been based on § 305(a)(1) of the Bankruptcy Code and thus does not require an analysis as to whether dismissal would be in the best interests of debtors and creditors. Most cases base "bad faith” dismissal on § 1112(b), which permits a court to dismiss a Chapter 11 case "for cause....” See
 
 SGL Carbon,
 
 200 F.3d at 159-60;
 
 Trident Assocs. Ltd. P’ship v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. P’ship),
 
 52 F.3d 127, 130 (6th Cir.1995);
 
 In re Marsch,
 
 36 F.3d at 828;
 
 Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture),
 
 936 F.2d 814, 816 (5th Cir.1991);
 
 First Nat’l Bank of Sioux City v. Kerr (In re Kerr),
 
 908 F.2d 400, 404 (8th Cir.1990); see also,
 
 In re C-TC 9th Ave. P’ship,
 
 which cites § 1112(b). In any event, suspension of a case requires an examination of the factors in § 305(a)(1) of the Bankruptcy Code and permits the court to consider whether dismissal or suspension would be more appropriate.